KITCHENS, Justice,
concurring in part and dissenting in part.
¶ 39. There can be no doubt that prosecutions under Mississippi’s habitual-offender statutes must occur in bifurcated trials. Seely v. State, 451 So.2d 213, 214 (Miss.1984). At the sentencing trial, “the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of prooff,]” that is, beyond a reasonable doubt. Id. at 215. After reviewing the transcript of the pretrial hearing on the motion to amend the indictment as well as the sentencing hearing, I am convinced that the State failed to prove the allegations of habitual-offender status in Conner’s indictment beyond a reasonable doubt, and Conner was denied his right to confront a witness against him in the process. Because the State failed in its proof, and Conner’s constitutional right to confrontation was violated, I must respectfully dissent in part. I would vacate his sentences and remand for resentencing as a nonhabitual offender. I also join the part of Justice Dickinson’s opinion arguing for the reversal of Conner’s burglary conviction. With the majority, the only point upon which we agree is that Conner’s conviction of felony fleeing should be affirmed.
¶40. Conner’s amended indictment alleges that he has five prior convictions: two for robbery with a deadly weapon, and three for robbery. The indictment alleges that he was sentenced to and served more than one year on each of those prior charges.[7] The motion to amend the indictment was accompanied by pen packs from the State of Tennessee Department of Corrections and an affidavit from Candace Whisman, a corrections official, outlining her interpretation of Conner’s sentences and prison time. The trial court amended the indictment based upon the State’s representation that, at sentencing, it would be able to prove beyond a reasonable doubt that Conner had served more than a year on two prior convictions, at least one of which was a violent crime. In other words, the trial court’s acceptance of the pen packs and affidavit for the purpose of amending the indictment opened the door for the State to undertake the task of proving Conner’s habitual-offender status. By no means did the trial court’s ruling mean that the State also had crossed the threshold of reasonable doubt necessary for it to sentence Conner as an habitual offender.
¶ 41. Both at the pretrial hearing and at sentencing, Conner objected to the admission of the pen pack and explanatory affidavit because it violated his right to confront the witnesses against him. Additionally, at the sentencing hearing, he argued that the State had failed to meet its burden of proof in showing that he should be sentenced as an habitual offender. Because I find that the issues are interrelated, I will address them together.
¶ 42. It is undisputed that Conner has an extensive criminal history. At the age of forty-nine, he has amassed an impressive rap sheet. However, the scope and depth of Conner’s criminal past in no wise relieves the State of proving beyond a *156 reasonable doubt, in a separate trial, that Conner has twice been convicted of crimes for which he was sentenced to and served more than one year, one of those being a violent crime.[8] Miss.Code Ann. § 99-19-83 (Rev.2007). The prosecution set out to make such proof by means of the extensive pen-pack records outlining Conner’s criminal history, as well as Whisman’s accompanying affidavit providing her interpretation of those records’ meaning. The State attempted to place the pen packs and affidavit into evidence by asking the court to incorporate them into the record through reference to the pretrial hearing on the motion to amend the indictment. At that point, the trial court determined that the State had met its burden, and that Conner should be sentenced as an habitual offender.
¶ 43. After reviewing the transcript of the sentencing hearing, I cannot see how the trial court was able to determine beyond a reasonable doubt that Conner was an habitual offender under Section 99-19-83 based upon the pen pack itself. The pen pack covers multiple felony convictions, misdemeanor convictions, and parole releases and revocations over a twenty-year period. It is extensive. In the record on appeal, it is not in chronological order. After studying the pen pack, it is not clear to me how much time Conner served for a number of the felonies for which he was convicted. The only way to reach a conclusion as quickly as the trial court did, without an extensive knowledge of the Tennessee Department of Corrections’s administrative regulations, would be to rely totally upon the affidavit provided by Whisman.
¶ 44. When the court asked Conner whether he objected to incorporating the pen pack and affidavit into evidence, he argued that the documents were inadmissible hearsay and that they violated his right to confront the witnesses against him.[9] The judge overruled those objections. He then conducted a brief examination of Conner’s prior convictions and sentences.
Court: First and foremost, I’ll note that the documents before the Court do establish Mr. Conner as a Section 99-19-83 habitual offender and he will be sentenced as such.
I’m looking at Mr. Conner. Here’s a conviction for a robbery with a deadly weapon, appears to be a second conviction, appears to be contemporaneously, but a second conviction for robbery with a deadly weapon. The third, apparently contemporaneous, robbery conviction. Appears to be a repeat of that same conviction, the next one. And another non-contemporaneous later in time, robbery conviction.
¶ 45. At no point did the court specifically find that Conner had served a year or more on any of those listed prior convictions, nor did it indicate which prior convictions alleged in the indictment specifically were being used to enhance Conner’s *157 sentence or for which ones the State had met its burden of proof. It is obvious to me, after having reviewed the extensive pen packs, that the only way to make real sense out of Conner’s conviction and sentencing history is through the affidavit from Whisman. This constituted the real proof against Conner in adjudicating him an habitual offender. Her absence from Conner’s sentencing hearing deprived him of the fundamental right to confront the witnesses against him, and his sentence as an habitual offender should be reversed.
¶ 46. “[T]he admission of a testimonial statement of a witness who does not appear at trial is barred, unless that witness is unavailable, and the defendant has had a prior opportunity for cross-examination.” Corbin v. State, 74 So.3d 333, 338 (¶ 13) (Miss.2011) (emphasis added). “[A] statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused.” Hobgood v. State, 926 So.2d 847, 852 (¶ 11) (Miss.2006). The United States Supreme Court has stated that testimonial statements can be “ex parte in-court testimony ... material such as affidavits, ... [or] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Crawford v. Washington, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (emphasis added) (internal quotations omitted). Whisman’s affidavit, explaining the complicated and extensive pen pack detailing Conner’s sentencing history, was unequivocally testimonial. It explained the meaning of the attached pen-pack documents and was used to remove any doubt as to Conner’s prior sentences and their length. Whether Whisman’s interpretation of the pen-pack materials is right or wrong, it is, nevertheless her interpretation. Conner had a state and federal constitutional right to cross examine her. See U.S. Const. amend. VI; Miss. Const, art. 3, § 26.
¶ 47. The State had a burden to prove its case at the sentencing hearing. It provided the certified pen-pack documents, which the majority correctly recognized as competent evidence. See Taylor v. State, 122 So.3d 707, 709, 711 (¶ 11) (Miss.2013). However, as clearly recognized by the State, the documents are difficult to interpret without the knowledge of someone well versed in the administrative procedures of the Tennessee Department of Corrections. Whisman interpreted the documents in the pen pack and stated her conclusions regarding Conner’s prior convictions and sentences. It was incumbent upon the State to produce Whisman as a witness to ensure that she could explain her reasoning for her conclusions, and it was incumbent upon the State to provide Conner the opportunity to cross-examine her and challenge the validity of her conclusions. At the sentencing hearing, the State argued that Conner should have subpoenaed Whisman if he wished to cross-examine her. This is incorrect. The burden is on the State to prove the defendant qualifies for habitual-offender status; it is not on the defendant to prove that he does not. Whisman was necessary to prove the State’s case, and the State had the burden to ensure her appearance at the sentencing hearing. Whisman’s affidavit was the State’s strongest and clearest proof that Conner was an habitual offender beyond a reasonable doubt. Such a testimonial statement is barred from admission into evidence when its author does not appear at trial. Corbin, 74 So.3d at 338. As Whisman did not appear at trial, her affidavit should have been denied admission into evidence. The trial court’s failure to do so was reversible error.
*158 ¶48. As for the majority’s contention that this Court has never held that confrontation rights exist at sentencing, I must disagree. This Court unequivocally has held that those rights exist at the sentencing stage of a bifurcated trial.
A jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof. The state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge. The defendant also has the same rights at both stages of trial.
Seely, 451 So.2d at 215 (Miss.1984) (emphasis. added). Clearly, in a proceeding against an alleged habitual offender in Mississippi, the accused’s right to confront the witnesses against him exists at the guilt phase of his bifurcated trial, and that same right exists at sentencing.
¶ 49. This Court long ago recognized that, in cases in which the State seeks to punish a defendant as an habitual offender, “[tjhere appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender....” Id. The Court recognized that the only way to adjudicate habitual-offender status was to hold “a full two-phase trial prior to any finding that a defendant is an habitual offender and subject to enhanced punishment.” Id. Here, the trial court perfunctorily examined an extensive and confusing record of Conner’s criminal history and relied on an inadmissible, testimonial affidavit to conclude that Conner qualified for habitual-offender status. Conner’s right to confrontation was violated, and he was summarily adjudicated an habitual offender in a hearing resembling a trial in only the loosest terms, as far as its recognition of the rules of evidence and the constitutional rights of a criminal defendant are concerned. Without Whisman’s affidavit in evidence, the State did not remove all reasonable doubt from its allegations that Conner was an habitual offender. Accordingly, I would hold that Conner’s sentence as an habitual offender should be reversed, and his case should be remanded for re-sentencing as a nonhabitual offender.
KING, J„ JOINS THIS OPINION.

. Mississippi Code Section 99-19-83 requires proof of only two prior convictions for which the defendant was sentenced to and served more than one year. However, the State apparently wanted to make it abundantly clear that Conner had five prior convictions that could meet the standard for a life sentence as an habitual offender. See Miss.Code Ann. § 99-19-83 (Rev.2007).

. The State could have greatly eased its requirement of proof by charging Conner under Section 99-19-81. That section requires that the State show only that Conner was sentenced to a year on two separate crimes. For such proof, just the judgment of conviction and sentence would have been enough. At Conner's age, he likely would have served out the remainder of his life under that sentence. See Miss.Code Ann. § 99-19-81 (Rev.2007).

. Conner did not raise the confrontation clause issue on appeal. However, he did object on that basis at the sentencing trial. "Under the doctrine of plain error, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s fundamental, substantive right.” Corbin v. State, 74 So.3d 333, 337 (¶ 11) (Miss.2011) (quoting Smith v. State, 986 So.2d 290, 294 (Miss.2008) (internal quotations omitted)).