761 So.2d 950 (2000)
Thomas L. GRAVES a/k/a Thomas Lawson Graves, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KM-01576-COA.
Court of Appeals of Mississippi.
June 13, 2000.
*952 Chris N.K. Ganner, Attorney for Appellant.
Office of the Attorney General by John K. Bramlett Jr., Attorneys for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Thomas Graves appeals the Rankin County Circuit Court's decision affirming the Rankin County Court's conviction of operating a motor vehicle with a blood alcohol content in excess of the legal limit of .10 percent and careless driving. Aggrieved, Graves assigns the following issues as error:

ISSUES
I. THE TRIAL COURT ERRED BY ALLOWING OFFICER THRASH TO TESTIFY BEFORE THE JURY ABOUT ADMINISTERING THE HORIZONTAL GAZE NYSTAGMUS TEST.
II. THE TRIAL COURT ERRED BY ALLOWING OFFICER THRASH TO RENDER AN EXPERT OPINION WITHOUT BEING QUALIFIED AS AN EXPERT.
III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE A HEARSAY STATEMENT PREPARED BY LAW ENFORCEMENT PERSONNEL, IN VIOLATION OF DEFENDANT'S RIGHT TO CONFRONTATION.
IV. THE TRIAL COURT ERRED BY REFUSING TO GRANT THE DEFENDANT A JURY INSTRUCTION EMBODYING HIS THEORY OF DEFENSE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Graves appeals his conviction of driving under the influence and careless driving; however, he neither raises any issues nor cites any authority in regards to the careless driving charge. Therefore, the careless driving charge is automatically affirmed.
¶ 4. On November 4, 1995, Thomas Graves was arrested and charged with operating a motor vehicle with a blood alcohol content in excess of the legal limit of.10 percent. Officer Ronnie Thrash, a Reservoir Patrolman, testified that he was driving west on Spillway Road on top of the levee on November 4, 1995, when he met Mr. Graves traveling east. Officer Thrash stated that he saw Graves swerve over the center line into his lane. He also testified that this caused him to turn around to follow Graves, where he witnessed him weaving and continuously jerking back and forth across the road. Officer Thrash pulled Graves over and asked him for his driver's license. He testified that Graves had problems finding his license and ultimately gave him the whole wallet. He stated that he smelled alcohol on Graves's breath and that Graves leaned on the car door for support when he got out of the vehicle. Officer Thrash went on *953 to explain that he performed several field sobriety tests on Graves, the walk and turn, the one-leg stand, the portable breath test and asked Graves to say the alphabet. He testified that Graves failed all of the tests including the horizontal gaze nystagmus test (HGN). Officer Thrash explained that the HGN test requires the person to follow a pen with their eyes as the officer moves the pen to the left and to the right while watching the eyes to see if they make a jerking motion. Then the officer testified that he took Graves to the Reservoir patrol office to give him an intoxilyzer test which established that Graves's blood alcohol content was .227.
¶ 5. The only testimony that Graves presented in his defense was the testimony of Officer Hulett, the officer in charge of calibrating the intoxilyzer machines for the Mississippi Highway Patrol. Officer Hulett testified that he checked the machine in Rankin County on November 17, 1995, December 5, 1995, January 5, 1996, February 27, 1996, March 29, 1996, April 18, 1996, and the calibration was always correct. He also testified that on April 22, 1996, he removed the machine in order to change the battery that controls the time and date. On cross he explained that the battery has nothing to do with the administration of the intoxilyzer test and the proper calibration of the machine.
¶ 6. Thomas Graves was originally convicted in the justice court of Rankin County, Mississippi; he appealed this conviction to county court and was convicted in a de novo trial by a jury. He then appealed that decision to the Circuit Court of Rankin County, which affirmed his conviction. He now appeals that decision to this court.

ANALYSIS

I. THE TRIAL COURT ERRED BY ALLOWING OFFICER THRASH TO TESTIFY BEFORE THE JURY ABOUT ADMINISTERING THE HORIZONTAL GAZE NYSTAGMUS TEST.
¶ 7. Graves's first issue is that the trial judge improperly allowed Officer Thrash to testify about his administering the HGN test to Graves and the results of that test. While this case was tried on September 9-10, 1996 before the Mississippi Supreme Court released its opinion in Young v. City of Brookhaven, 693 So.2d 1355 (Miss.1997); that case pertains to this issue. While the supreme court affirmed Young's conviction of the operation of a vehicle while intoxicated in violation of Section 63-11-30(1)(c), that court held that the HGN test could not "be used as scientific evidence to prove intoxication or as a mere showing of impairment." Young, 693 So.2d at 1360-61. "[T]he only allowable use for the test results" is "to prove probable cause to arrest and administer the intoxilyzer or blood test." Id. at 1361. In Young, the officer testified to the correlation between the results of the HGN and the intoxilyzer and attempted to use the test to prove the percentage of blood alcohol content and whether the defendant was driving under the influence. Id. at 1359. The supreme court's reason for so holding was that it found that "the HGN test is not generally accepted within the scientific community...." Id. at 1360. The court concluded:
We deliver a stern warning concerning using the HGN test for reasons other than to establish probable cause. The State cannot use the results of the HGN test merely as an indicator to show that the defendant was "under the influence of intoxicating liquor" to prove the requisite elements of Miss.Code Ann. § 63-11-30(1)(a). Furthermore, the State cannot attempt to introduce the HGN test as scientific evidence to show degree of intoxication.
Young, 693 So.2d at 1361.
¶ 8. The general rule is that decisions of the Mississippi Supreme Court are presumed to have retroactive effect. Morgan v. State, 703 So.2d 832, 839 (Miss. 1997). Only where "`retroactive enforcement *954 would cause serious disruption of the administration of justice and where the prior rule was not infected by a serious absence of fundamental fairness" will decisions of our supreme court not be retroactively applied. Id.
¶ 9. First, Young can be distinguished from the case at bar and, secondly, the court in Young found the error to be harmless error due to the overwhelming evidence of intoxication presented. In the case sub judice, the officer did not testify regarding the technical and scientific aspects of the HGN test. He did not attempt to use the HGN test to establish that Graves was intoxicated or to determine his level of intoxication as in Young; he only used the test in its permissible manner, to establish probable cause. The court in Young made it clear that the HGN test cannot be used to indicate impairment or to show the degree of intoxication; however, the test can still be used as a field sobriety test to establish probable cause to administer the intoxilyzer, as Officer Thrash used the test here. In the case at bar, the officer testified to giving the HGN test along with several other field sobriety tests and that these tests led him to believe Graves may be intoxicated; therefore, he took him to the patrol office to administer the intoxilyzer. We hold that this was not error. Furthermore, we find that if his testimony crossed the line, as in Young, the error would be harmless in light of the overwhelming evidence to support Graves's intoxication. This issue is without merit.

II. THE TRIAL COURT ERRED BY ALLOWING OFFICER THRASH TO RENDER AN EXPERT OPINION WITHOUT BEING QUALIFIED AS AN EXPERT.
¶ 10. Graves contends the trial court committed error by allowing Officer Thrash, over objection, to give expert testimony, as a lay witness, concerning the field sobriety tests and in particular, the HGN test. The State argues that the testimony was actually lay opinion testimony.
¶ 11. In order to testify as an expert, a witness must first be offered as such and the qualifications established and, if desired, rebutted by opposing counsel. M.R.E. 702. The issue for admitting lay opinions is solely whether they are rationally based on the witness's perceptions and would be helpful. M.R.E. 701. Rule 701 of the Mississippi Rules of Evidence states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
There is a bright line rule to distinguish between the two rules. That is, where, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E. 702 opinion and not a Rule 701 opinion. Mississippi State Highway Commission v. Gilich, 609 So.2d 367, 377 (Miss.1992) (stating that lay opinions are those which require no specialized knowledge however attained); Seal v. Miller, 605 So.2d 240, 244 (Miss.1992) (stating that question calling on police officer to respond based on experience as an officer investigating accidents is by definition not a lay opinion.) Wells v. State, 604 So.2d 271, 279 (Miss.1992) ("[I]f particular knowledge ... is necessary to assist the trier of fact ... then such testimony would never qualify as a lay witness opinion under M.R.E. 701.") Sample v. State, 643 So.2d 524, 529-530 (Miss.1994). One of the problems with blurring the distinction is that expert opinion testimony must be noted in discovery to provide an opportunity for the opposing party to prepare a rebuttal. Id. at 530.
¶ 12. The resolution of whether the officer's testimony regarding the HGN test was permissible under Young helps us resolve *955 this issue. We found that Officer Thrash's testimony was not so complex and technical as to render it a violation of Young. In requiring field sobriety tests to not be scientific and complex, the question of whether an officer must be an expert in order to testify to the administration of these tests is answered. Field sobriety tests, including the only permissible use of the HGN test, rely upon common experiences to develop an opinion whether a person is intoxicated or not. These tests are based upon coordination and the ability to concentrate, with simple exercises such as reciting the alphabet, walking, or standing on one leg. These tests only require the officer to observe the actions of the person or whether he was slurring, stumbling or staggering and testify to them in court. Accordingly, an officer should not have to be rendered an expert to give opinion testimony regarding the administration of these common sense tests. This issue is also without merit.

III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE A HEARSAY STATEMENT PREPARED BY LAW ENFORCEMENT PERSONNEL, IN VIOLATION OF DEFENDANT'S RIGHT TO CONFRONTATION.
¶ 13. Graves contends that his right to confrontation was violated by the introduction of hearsay, specifically the calibration certificates, in the absence of the calibrating officer. However, this argument was squarely rejected in the case of McIlwain v. State, 700 So.2d 586 (Miss.1997). In McIlwain, the court stated "the State must present the testimony and allow cross-examination of the calibrating officer only in the absence of the certification of the intoxilyzer or where there is a genuine issue as to the authenticity of the certification, which, as stated above, may normally be authenticated by the method set out in Rule 901(b)(7)." McIlwain v. State, 700 So.2d at 590.
¶ 14. Additionally, Mississippi Rule of Evidence 803 provides in part that:
The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:
(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
¶ 15. The court in Harkins v. State, 735 So.2d 317, 319-320 (Miss.1999) concluded that the actions of a calibration officer in performing his customary role of certifying the calibration of intoxilyzers properly fall under the business records exception to the hearsay rule in Rule 803(6), unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."
¶ 16. Thus, the State is permitted to introduce calibration certificates without violating the hearsay rule unless the defendant is able to demonstrate some reason why the presumption of trustworthiness generally granted to business records should not apply in a particular case. This issue is without merit.

IV. THE TRIAL COURT ERRED BY REFUSING TO GRANT THE DEFENDANT A JURY INSTRUCTION EMBODYING HIS THEORY OF DEFENSE.
*956 ¶ 17. Graves maintains the trial court erred in failing to properly instruct the jury. Specifically, Graves contends that defense instruction D-4 was improperly denied, thus preventing him from presenting any instruction as to his theory of defense. Instruction D-4 reads:
The Court instructs the jury that simply because the results of the breath analysis test are admitted into evidence, does not mean that you must find the test result to be correct. It is your duty as a juror to judge the credibility of the breath test.
¶ 18. Defendants are entitled to have instructions on their theory of the case presented to the jury for which there is a foundation in evidence, even though the evidence might be weak, insufficient, inconsistent or of doubtful credibility, and even though the sole testimony in support of the defense is the defendant's own testimony. Welch v. State, 566 So.2d 680, 684 (Miss.1990). However, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence. Jackson v. State, 645 So.2d 921, 924 (Miss.1994).
¶ 19. When dealing with an issue of a refused jury instruction, as we are here, the trial court is afforded considerable discretion, and our primary concern on appeal is that "the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it." Splain v. Hines, 609 So.2d 1234, 1239 (Miss.1992) (citing Rester v. Lott, 566 So.2d 1266, 1269 (Miss.1990)).
¶ 20. The State asserts that the instruction was refused because it was an improper comment on the evidence. The trial court so ruled, and we are inclined to agree. Furthermore, in this case, Graves never offered any evidence that would support the notion that the breath analysis test was inaccurate. The only evidence Graves presented at trial was testimony by Officer Hulett that the machine required a new battery five months after the incident in question, without any evidence that the battery affected the calibration of the intoxilyzer. We agree, as a general proposition, that a defendant is entitled to have the jury instructed on his theory of the case. That is not the case, however, if the record contains no evidence that would support the theory. Instruction D-4 was without foundation in the evidence; therefore, we find that it was properly refused by the trial court.
¶ 21. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF DRIVING UNDER THE INFLUENCE OF INTOXICANTS AND FINE OF $1,000 WITH $250 SUSPENDED AND CARELESS DRIVING AND FINE OF $50 AND SENTENCE OF 48 HOURS IN THE CUSTODY OF THE RANKIN COUNTY JAIL AND ATTENDANCE OF MASEP DRIVING COURSE IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.